(110 App. Div. 793.)

### HANSON v. WHALEN et al.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

RAILROADS—OBSTRUCTION AT CROSSING—CONTRIBUTORY NEGLIGENCE.

 A motorman, who ran his car with full power at a speed of 45 miles an hour on a down grade, when he knew that a steam roller was either on or close to the track, until he had reached a point where it was impossible for him to stop and avoid the danger of a collision with the roller, was guilty of contributory negligence.

 [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 942.]

Appeal from Trial Term, Fulton County.

Action by Mack Hanson against John W. Whalen and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Majendie Johnston (Andrew J. Nellis, of counsel), for appellant.

Weeds, Conway & Potter (Thomas F. Conway, of counsel), for respondents.

CHASE, J. The defendants are copartners, and on the 16th day of September, 1904, and for several months prior thereto, were engaged in improving a highway at and near the village of Cranesville, Montgomery county, under the direction of an employé of the state engineer. The defendants were macadamizing the highway, and crushed stone was placed thereon and rolled with a steam roller, weighing over 12 tons. They had worked toward and about a crossing of said highway at grade, by the Johnstown, Fonda & Gloversville Railroad Company, and on said day, the filling of crushed stone extended to the tracks of said railroad at the crossing on either side, and it was necessary for the defendants, in rolling said stone, to propel the steam roller at least partly across the first track. It is claimed that the railroad company, a short time prior to September 16, 1904, had raised their tracks, and, in doing so, had left the planking between the tracks at the crossing two or more inches lower than the top of the rails. The

crossing was not at right angles. On September 16, 1904, in rolling said crushed stone adjoining the tracks for the first time from that side, the front wheel of the roller went over the first rail, and, when the man in charge of the roller tried to back it from the track, the wheel slid along the inside of the rail instead of passing over it, and the man in charge thereof was temporarily unable to back the roller off the track. A car on said railroad approached at the rate of 45 miles an hour, and struck the roller, throwing it about 50 feet. The vestibule of the car was smashed, and the car was derailed, and struck and cut off an ordinary telephone pole. The motorman on said car was injured, and this action is brought against the defendants to recover damages sustained by him, claiming that his injuries resulted from the defendants negligently obstructing the said track. The car was known as a "limited" car running with only two stops between Schenectady and Amsterdam. The running time between the said places, a distance of between 16 and 17 miles was 45 minutes, being an average speed of about 22 miles an hour. The car approached the crossing from the east, and on a down grade.

The rules of said railroad company provide that a motorman shall not allow the current to remain on when the car is going down grade, and schedule time can be made without using the current. They also provide that a motorman shall exercise constant care to prevent injury to persons and property, and that, in all cases of doubt, he must take the safe side. They also provide that, whenever persons or vehicles ahead of the car are in a dangerous position, a motorman must not rely upon them to get away safely, but he must get his car under full control, or stop at once; and they further provide that motormen must take every precaution for the protection of their cars, even where it is not provided for by the rules, and that, in all cases of doubt and uncertainty, they must take the safe course, and run no risk. The roller, or a wagon, on or near said crossing could be seen by a motorman on the car as he approached the crossing from 1,000 to 1,500 feet therefrom, although, until he reached a point about one rail's length east of a whistling post, 500 feet east of the crossing, it is claimed by the plaintiff that it was impossible to tell whether such vehicle was on the track or close to the track. The defendants employed about 50 men, 10 teams, and the roller, in the work on said highway. The plaintiff had seen the defendants and their employés at work on the highway for months and knew when he approached the crossing that they were then working in the immediate vicinity of the crossing and that it was necessary to run the roller on the tracks to do the work. When he was a sufficient distance from the crossing to have stopped the car before reaching it, he saw that the roller was at the crossing, but could not tell with certainty whether it was on the crossing or only very near it. Instead of turning off the power and checking the speed of his car to such an extent that he could have stopped it after ascertaining the exact position of the roller, he ran with full power and speed until within 50 or 75 feet of said whistling post, and then reversed his power, and applied the emergency breaks; but the car was going at such speed that it was impossible for him to stop in time to avoid the accident. He says that it was necessary for him to propel his

car at 45 miles per hour to make his time between Schenectady and Amsterdam. It does not appear that he was directed by the company or that it was necessary to run at any particular speed at any particular place. His only duty, so far as appears from the record, was to make the time between the two places as stated. He admits that he was required by the company, when crossings could not be seen, to slow down, for the reason that if he did not slow down he could not see a crossing in time to stop, if necessary, before reaching it. The same reason exists, where the view of a crossing is not such as to enable a motorman to determine with certainty whether it is necessary to stop before reaching it. The plaintiff further says that, if he had slowed to 12 or 15 miles an hour, he could have stopped his car in 200 or 300 feet. It would appear, therefore, that it would not have been necessary for him to have slowed his car very much to have stopped, after he reached the point about 575 feet from the crossing, where he could see that there was an obstruction on the track. He should have had his car sufficiently under his control, so that he could have stopped it when he found that it was necessary to do so. He insists that he kept his eyes on the crossing from the time when he first came in view thereof, but his watching the crossing was not of the slightest value, because when he was first able to ascertain with certainty that the roller was on the crossing it was too late for him, at the speed at which he was running, to stop his car in time to prevent a collision. So far as appears from the results, his conduct would have been no less prudent and cautious if he had run the car in the same manner with his eyes closed until he was within 575 feet of the whistling post.

It does not seem necessary to discuss the very interesting and important question of the relative rights of electric cars and travelers on a highway at country highway-grade crossings, for the reason that we are of the opinion that, upon the facts of this case, the plaintiff, by running his car with full power on the down grade when he knew that a steam roller was either on or very close to the track until he had reached a point where it was impossible for him to stop in time to avoid the possible danger, was guilty of contributory negligence. He wholly failed to take any precaution whatever to check or control his car when it was his duty to have done so.

The trial court dismissed the complaint on the ground that the plaintiff was negligent, and that his negligence had contributed to his injuries, and we think the judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.